May it please the Court, my name is Robert Lyons. I'm appearing on behalf of the United States. If I may, I would like to request two minutes for rebuttal time. I think this Court's disposition of this appeal will focus mainly on whether the District Court's guideline errors are either material or harmless. I don't think there's any real question that the District Court erred in its guideline calculations. The question is, given the District Judge's obvious reluctance to change the sentence, whether that is material or whether this Court would have to go to the second question, which would be whether the ultimate sentence was reasonable. Well, the Supreme Court's got a couple of these cases, doesn't it? Yes, Your Honor, and this Court embargoed. So what's the point of either signing it? Because everybody agrees you need a correctly calculated guideline. Oh, but what's the point of either signing it if the Supreme Court's about to decide it? Because even if the Supreme Court rules the weight to be given to a correctly guidelines calculation, everybody agrees that whatever weight is to be given to that range, you need a correct range to consider it at all. We don't know. You know, it strikes me the government is trying by the back door to restore the guidelines, which the Supreme Court said were unconstitutional. And speaking for myself, I wouldn't hear this case because the Supreme Court is going to tell us, did we really mean it or didn't we mean it? All right, allow me to address that directly. If the guidelines are to be given any consideration at all. Advisory, advisory, yeah. Yes, Your Honor. Yes, Judge. If they are to be given any consideration at all, if they are to be anything more than a number you can ignore at will, I think it makes sense that the range has to be correctly calculated. I mean, the precedence of the Supreme Court. That's what we've said in Cantrell and other cases. We've made it pretty clear in our own case law that following Booker that we still have to calculate, the district court judges still have to correctly calculate the guidelines. Yes, Your Honor. And that's what I understand your first attack here to be is that the district court didn't correctly calculate the guidelines. And it's a significant difference. I mean, the 96 months is just under a 50 percent drop from the bottom of the guidelines. And even if you don't want to go, you know, even if you don't want to go to the route of determining whether a sentence is reasonable, you know, even with hardly any reference to the guidelines, I think we have. That's the question I agree with Judge Noonan on, that we don't want to go there until we hear what the Supreme Court has to say. Well, I think. Because they're going to tell us how much weight these guidelines are entitled to. Here's what I'm asking the court today. Here's what the government's asking this court to do. We're asking the court to rule on the guideline errors that were made below and remand the case to the district court. At that point, the Supreme Court will have ruled as to the proper weight to be given the guidelines. But I would submit to you that this court should not hold this case until the Supreme Court rules. Because unless the Supreme Court says the guidelines are to have no weight and can be ignored at will, if it says they are to be given any weight at all, even if you don't get a presumption of reasonableness, even if whatever articulation is required for within guidelines sentence is different, if there's any association with the guidelines, any analysis vis-a-vis the guidelines, everybody agrees the guidelines have to be correctly calculated. And we don't have that. Counsel, in this case, is what the court did on the first appeal of this case, is that an aberration or have there been a lot of decisions like that in this circuit? They didn't address the guideline issue, as you know. Oh, as to what they're doing on remand in this circuit? No, as to what happened on the first appeal, this court did not address the propriety of the computation of the guidelines on the first appeal. Is that kind of an aberration or is that a frequent problem? The first appeal occurred approximately two weeks after Booker was issued, at a time when the dockets of the appellate courts were overwhelmed. And I think what the panel did was correctly determine the conviction issues, looked at the sentencing appeal issue raised by the defendant, rejected it, and then said the rest of the sentencing issues raised by the government are difficult, but looking at Booker, we're going to remand it. And that's what they did. As it turned out, we later came down with our amyling decision on plain error and said that the third prong, got to send it back to the district court, to ask the district court whether, now knowing that the guidelines are advisory, would the district court have imposed the same sentence or a different sentence? That's essentially what happened here. Well, actually, what's interesting is that the district judge acted as though Blakely applied. I mean, we state in our brief and it's in the record. I mean, the court said he basically yielded that he made guideline errors in his calculations. He yielded that. And what he said, though, was, well, it doesn't really matter because some of the enhancements I gave couldn't be given again because they weren't in the indictment, they weren't in the verdict form, and the jury didn't find them. Well, that's Blakely. That's not Booker. And we tried to explain that to the judge, but without success. And what we're asking this court to do is rule on the guideline errors, remand the case, the district judge can sit on the case until the Supreme Court rules, and then we know, once we have a correctly calculated guideline range, what weight is to be given to them. Because I would submit if this court sits on this appeal until the Supreme Court rules, it's still going to have to rule on the guideline errors that we raise. Well, we would have a lot more light. I'm sorry, Your Honor. We would have a lot more light. Well, you might have less work if you decided the way I'm suggesting because depending on how the district judge rules — That's not our criterion. The criterion is would it be clarified, and it would be clarified. I don't know why you're so anxious to get it back there. Well, if the court — well, I guess the question is, if you have the — if the guideline errors are as we say they are, my question, though, I guess would be what would this court do at that point? Would the court, having ruled that the guideline range is 188 months at the bottom and the judge gave them 96 months, is this court going to, on its own, say whether that's reasonable or unreasonable? Or is the court going to remand at that point and say, District Judge, now that we've corrected you and let you know that the correct guideline range is 188 to 235 months, now that you know that, that your guideline calculations were wrong, what sentence would you issue under the 3553A factor? So I'm suggesting to you that you're not going to — the court would not benefit from waiting for the Supreme Court to rule because you're going to have to do the exact same thing, and you're not going to have any judicial economy by waiting until the Supreme Court rules. That's my — is my suggestion. If we do what you ask that we do, and I'm not sure we shouldn't, but if we do, we're going to get three appeals from a single sentence in this case, aren't we? Well, I'm not sure you're going to not have that anyhow, because if the Supreme Court's — let's say the Supreme Court rules, let's say that they give very little deference to the guidelines. Let's assume that's the — and then we have — but we — so this court rules. We still don't know how the District Judge is going to rule at that point. I mean, don't — I have a pretty good idea how the District Judge is going to rule. I'm — I'll yield that. You really seriously said that? The District Judge, we don't know how he will rule if he got a chance? Well, it's difficult to say, and for this reason. Let me — let me — let me say. The reasons the judge gave for not correcting his — the errors were so erroneous. I think he's going to have difficulty justifying this sentence under a proper analysis. I mean, a year and a day after Booker — and I'm saying this, I'm hoping I'm not being disrespectful to the judge, but a year and a half — excuse me, a year and a day after Booker, he ruled as though Blakely applied. And to me, that suggests that he's having difficulty justifying this sentence, having it being pointed out to him, his guideline errors. And I would — like, again, I can't be critical if this court wishes to wait for the Supreme Court, but it is my suggestion that there is — there may not be a need to do so if this court can correct the guideline errors and give good instructions to the District Judge, and, you know, he waits until the Supreme Court rules. Well, what you're asking us to do is what we now know the prior panel should have done. Isn't that correct? Yes, Your Honor. And it's calculated. And just because Booker came out — nobody knew exactly what the effect of Booker was going to be the two weeks after Booker was issued, so I'm not critical of the prior panel, but that's the way — Well, they did not do that. We are at least looking at the potential for three appeals of a single sentence, all we know. And, like, the only thing I'm suggesting is I acknowledge that possibility, but I also acknowledge the possibility that the court — you know, that you may have that anyhow because I'm not sure this — that the court, after the Supreme Court rules, you're going to be able to get to the reasonableness if you rule that there's, you know, a 50 percent difference from the bottom of the guidelines. I'm not — I don't — you know, I don't — I can't. We have some cases like that already on the books. Substantial departures. I've sat on one of the panels that did that. But Cantrell says that you don't get to the reasonableness prong if you find — Oh, but reasonableness can mean a very large departure. If you have a material guidelines error, basically, the materiality goes to would the judge have known of his errors. And I'm suggesting to you — I will yield the reluctance of this judge to change the sentence, but I also will point to the record where he expresses — he must have unease with his current sentence because he's relying on Blakely. Okay. Thank you, Your Honor. You repeated that. Justice Noonan and Associate Justice, it's my great pleasure to be here. My name is Mont Tanner. I represent the defendant. And, you know, to follow up on what a counsel is talking about, whether the sentencing errors were material, I would submit to you that they were not material. And, in fact, if you look at the Muhammad case, it seems to me that this court has established the standard in reviewing the sentencing guidelines, and it's whether or not the sentence was reasonable. And as you, you know, correctly pointed out, this would be — this is the second appeal of the same sentence. In the first appeal, the government's primary arguments were the very same arguments he's raised today, and that is — We have a number of cases where we're going to have multiple appeals, mainly because of what we did in Amelot. Okay. Let me talk about the Muhammad case, because I think Justice Noonan correctly pointed out that in the Muhammad case, you know, the recommended sentencing guideline was 12 months to 18 months, and the justice in the Muhammad case sentenced Mr. Muhammad to 60 months, a grand departure from the recommended pre-sentence report and from the sentencing guidelines. And in that case, this court decided that that was reasonable. And, in fact, this court announced, you know, some further, you know, instruction about how you review these sentencing guidelines. And it seems to me that the critical element here is not whether or not the sentencing whether or not those — the sentence was reasonable. In fact, if you look at the language that this court has held in Muhammad, it says, we hold that any deviation from the applicable advisory guidelines range will be viewed as an exercise of the district court's post-Booker discretion and reviewed only for reasonableness. And this is very instructive. You know, they're analyzing the different circuits and how they're reviewing these sentencing guidelines. And this court has said, we think the better view is to treat the scheme of downward and upper departure as essentially replaced by the requirement that judges impose a reasonable sentence. The discretion that the district court judge employs in determining a reasonable sentence will necessarily take into consideration many of the factors enumerated in Section 5K of the sentencing guidelines. But to require two exercises, one, to calculate what departure would be allowable under the old mandatory scheme, and then to go through much the same exercise to arrive at a reasonable sentence is redundant. In addition, the use and review of post-Booker departures would result in wasted time and resources in the courts of appeals with little or no effect on sentencing decisions. Muhammad deals with departures under the guideline scheme. We're not talking about adjustments in Muhammad under the guidelines, which is what the government's appeal is all about. I think you're right. But that does deal with a departure. It's a departure. It's a difference between departures and adjustments. Okay. But I think what they're saying is essentially that — In this case, the district court judge gave a three-level downward departure under the guidelines. And under Muhammad, that takes care of that. It's folded into a 3553A analysis. But the government is complaining about other calculations at the guideline. For example, the grouping. Well, of course. The grouping. And there's other sentencing errors. A grouping and — it slips my mind, but — Leader, organizer, obstruction of justice. They're saying there's numerous errors that were made by the judge in calculating — Two primary ones. Grouping and — not the leadership, but the other one. But my point to be made in Muhammad is you — that this Court has articulated not so much that the — you know, the analysis in arriving at a proper sentence is correct, but more so that the ultimate sentence is reasonable and that there are factors that — Judge, you may be right. I mean, the Supreme Court might ultimately say that it doesn't really make any difference how you calculated the guideline as long as you took a look at them. But the bottom-line question is the sentence reasonable. And if that's where they go, I mean, you know, we don't need — you don't need to fuss with all the — Well, I think that's where this Court has gone because it's in Muhammad. Our court went with Cantrell. Our court in Cantrell said you got to — district court judge, you got to do a correct guideline calculation. Then you move over and you look — and that becomes one of the factors under 3553A for the district court judge to consider in looking at everything else under 3553A. Okay. You look at the guideline. That gives you some frame of reference, some starting point, something to think about. Okay. And then you look at all the other factors. Okay. Let me just say, though — That's what we said in Cantrell, and that's still the law of our circuit. The Supreme Court might say, look, bottom-line question here is, is this sentence reasonable? Getting back to this case, though, even before we get to that question as whether — the bottom line, whether the sentence was reasonable, I don't think this Court has — it's proper for this Court to go back and determine whether or not the sentence calculation was correct because it didn't do so prior to Booker. This first appeal was argued strenuously by the government, and its argument has continued today that these numerous errors in sentencing calculations have never been addressed is patently wrong. This Court reviewed on appeal these very same arguments and — and determined that there was no errors in the sentencing calculations. This Court's already made that determination in affirming the district court and affirming Mr. Tanner's original sentence. The case was remanded to determine whether Judge Dawson would impose a different sentence. It wasn't remanded for a — for a new sentencing hearing. It was simply remanded to determine whether Judge Dawson would render a different sentence. You're saying that's the law of the case. Absolutely. I would say that's the law of the case. Isn't it clear from the amended opinion that the Court did not review the guidelines issues in this case? Judge, I don't think that's clear. I'll tell you what — what I find is clear in the original decision of this Court in affirming Mr. Tanner's sentence to be, quote, this Court clearly stated in its order affirming the sentence of the district court, we cannot say in light of the district judge's careful consideration of both the — of both the guidelines and the individual circumstances of this case that the sentencing decisions were unreasonable. Now, there's nowhere in this Court's decision in affirming the district court's original sentence that he erred. It wasn't remanded because there was an error in calculating the sentencing guidelines. This Court affirmed the judge — the sentence of the district judge, Kent Dawson. And, in fact, it was remanded for the sole purpose of determining under Booker whether Judge Dawson would change his sentence, would — whether that would make a difference in his sentence. Breyer. You know, in the panel's order amending its memorandum disposition, it deleted the paragraph where it had initially discussed your — the government's arguments about the sentence. It said, take that out and, in turn, substitute this — this paragraph here. It says, we're remanding so the district court judge can determine whether the change in the law would make a difference in the sentencing in this case. He's not going to write. But I don't see anything in — Excuse me. They also said, review of this sentence imposed under pre-Luca law — pre-Booker law is unnecessary. How could it be clearer that they did not review the sentence? Well, before Booker came out, the — there's an order affirming the judgment of the district court. Prior to Booker, this is an amended order that you're referring to. Prior to that, the — the Ninth Circuit signed its order affirming — They vacated that order, though. They amended the disposition. Well, it — well, it did. I know it was amended after Booker, but I'm saying, if there were clear erroneous sentencing guidelines errors, they certainly would have been addressed by this court prior to Booker. Well, we — we — we — you know, it's not for us to — But I think that this court should look at the record and — and know that this is the third crack at the apple, so to speak, on the very same arguments. And Judge Dawson, if you look at the hearing transcript from the remand to determine whether or not he would change his sentence, Judge Dawson makes it very clear that there were not errors. And if one of our main post — I think Judge Noonan alluded — may have alluded to it, which is many whether, which was up here on, like, three times before we finally — before — after Booker, we said that the significant deviation or variance from the guidelines was that there was a reasonable sentence. I mean, it was a whopping difference. And that's why — It was a three — that was a three appeals to get to that point. Well, I think that you don't have to do that here because I think you can conclude that the sentence was reasonable in this case and that there has not been abusive discretion. We've heard — Very good. Thank you. Thank you. You've got one minute. The court — The panel's initial opinion was post Booker. I mean, counsel misspoke. I mean, where the court initially was just going to affirm and remand. I mean, if you look at the defendant's appendix, page 36, the court footnotes Booker's. And, you know, the initial opinion was issued two weeks after. So, I mean, the court just initially thought he didn't have to make exact guideline calculation determinations. But I just wanted to correct that factual error that the first opinion was post Booker.  And if the last court has any questions, we'll rest and repeat. Good. Thank you so much, counsel. We appreciate your arguments. The matter will be submitted. And at this time, we are through for the week. And good luck to all.
judges: Canby, Cox, Paez